UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| ALLISON WOODS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **JURY TRIAL REQUESTED** |
| THE JACKSON LABORATORY | ) | |
| | ) | |
| Defendant | ) | |

Plaintiffs Allison Woods, by and through the undersigned counsel, complain of

Defendant, The Jackson Laboratory, as follows:

## I.       INTRODUCTION

1.       This is an action for employment discrimination under the Maine Human Rights

Act, 5 M.R.S.A. §§ 4551 *et seq.* ("the MHRA") and the Americans with Disabilities Act (ADA),

42 U.S.C. §§ 12101 *et seq.* Defendant, The Jackson Laboratory (the "Lab"), is a nonprofit,

independent research laboratory. Allison Woods was at all relevant times a job applicant and/or

an employee of the Lab. Woods was subjected to unlawful employment discrimination by the

Lab due to her epilepsy.

## II.       JURISDICTION AND VENUE

2.       Jurisdiction properly lies in this Court pursuant to 28 U.S.C. § 1331 and §

1367(a).

3.       Venue properly lies in this Court based on Woods' residence in the County of

Hancock, State of Maine.

4.       All preconditions to jurisdiction of the ADA and the MHRA have been satisfied.

1

5.      Prior to filing this civil action, Woods filed a timely charge of discrimination on the basis of disability with the Maine Human Rights Commission ("the Commission") and the Equal Employment Opportunity Commission ("the EEOC").

6.      On September 12, 2016, the Maine Human Rights Commission found, consistent with the recommendation of the Chief Investigator, reasonable grounds to believe that the Lab discriminated against Woods by denying her reasonable accommodation for her disability and by discriminating against her on the basis of her disability in the terms and conditions of her employment. This action is filed within 90 days after the parties failed to successfully conciliate these claims. On September 12, 2016, the Commission found, contrary to the recommendation of the Chief Investigator, no reasonable grounds to believe discrimination occurred when the Lab terminated Woods. This action is filed within 90 days of this finding. On September 12, 2016, the Commission found no reasonable grounds to believe discrimination occurred by the Lab when it made illegal inquiry. This action is filed within 90 days of this finding. This action has been timely filed under the MHRA.

7.      On November 23, 2016, Woods received a Right to Sue letter from the EEOC dated November 23, 2016 authorizing her to bring suit against the Lab within 90 days of issuance of the letter.  This action has been timely filed under the ADA.

### III.      PARTIES

#### Plaintiff Allison Woods

8.      Woods is a citizen of the United States and a resident of the Town of Surry, County of Hancock and State of Maine.

9.      Woods is an individual with a disability within the meaning of the Maine Human Rights Act and the Americans with Disabilities Act.

2

10. Woods has epilepsy.

11. Epilepsy is a per se disability under the Maine Human Rights Act.

12. Woods' epilepsy and seizures substantially limit major life activities including seeing, hearing and speaking, among other major life activities.

13. Woods' epilepsy substantially limits bodily functions including brain and neurological bodily systems.

14. The Lab regarded Woods as disabled within the meaning of the ADA and the MHRA.

15. Woods has a record of disability within the meaning of the ADA and the MHRA.

16. Due to her epilepsy, Woods has seizures.

17. Woods' seizures are preceded by an aura that alters her that a seizure will follow. Woods is familiar with her body's seizure response. Woods is typically able to position herself in a safe space when she is alerted by an aura that she will have a seizure.

18. Woods was at all relevant times an applicant or an employee of The Lab.

19. Prior to being hired by the Lab, Woods worked in fast-paced restaurants and in a large grocery store. Woods works well with other people as well as alone. She is a graduate of high school and attended college. She has an excellent work ethic and a positive attitude. Until the Lab terminated her because of her epilepsy, she had never been terminated by an employer. She is able to follow direction from her superiors and she also takes initiative in her work.

20. Woods met all the prerequisites to be an Animal Care Trainee I. After interview and screening, the Lab hired her in this job.

21. At all relevant times, Woods was a reliable employee who performed her duties at the Lab in a satisfactory manner.

22.     At all relevant times, Woods was a "qualified individual with a disability" within the meaning of the ADA and the MHRA.

## Defendant the Jackson Laboratory

23.     The Jackson Laboratory is a nonprofit corporation with its principle place of business in Bar Harbor, Maine.

24.     The Lab is an independent, nonprofit research laboratory with a mission is to discover the genetic basis for preventing, treating and curing human diseases.

25.     The Lab, at all material times, owned and operated the facility where Woods worked.

26.     The Lab is a "person" within the meaning of the ADA. 42 U.S.C. § 12111(7).

27.     The Lab is engaged in an "industry affecting commerce" within the meaning of the ADA.  42 U.S.C. § 12111(5)(A).

28.     The Lab employed more than 15 employees for each working day in more than 20 weeks, during the preceding year.

29.     At all relevant times, the Lab employed more than 1,700 employees.

30.     At all relevant times, Eileen Phillips was employed as Director of Employee Relations.

31.     At all relevant times, the Lab was an "employer" within the meaning of the ADA. 42 U.S.C. § 12111(5) (A).

32.     The Lab is a "covered entity" within the meaning of the ADA. 42 U.S.C. § 12111(2).

33.     The Lab is an "employer" within the meaning of the MHRA. 5 MRSA § 4553(4).

34.     The Lab is "person" within the meaning of the MHRA. 5 MRSA § 4553(4).

35.     At all relevant times, the Lab has employed employees whose usual place of employment is in the State of Maine. 5 MRSA § 4553(4).

## IV.     FACTS

36.     On or about October 27, 2013, Woods applied for the position of Animal Care Trainee I.

37.     Woods was able to do the essential functions of the job of the position of Animal Care Trainee I, with or without reasonable accommodation.

38.     Woods subsequently interviewed with Linette Poirier, Recruiter and Ken Hendrix, Associate Director, JMCRS Animal Care Program.

39.     Poirier and Hendrix reviewed Woods' candidacy for the Animal Care Trainee I role. They were very impressed with Woods during the interview process. Poirier made a verbal conditional job offer to Woods on December 2, 2013. Woods was informed that she must fulfill the obligations of a post-offer, pre-employment background check and fitness for duty exam.

40.     On or about December 2, 2013, Woods underwent a pre-employment physical with the Lab's onsite provider, Alexandria Nesbit, PA-C. Nesbit met with Woods. Nesbit told Woods that she did not feel comfortable clearing Woods to work because of her epilepsy and that they will need to review her medical records before she was permitted to work. Woods agreed to let Nesbit to access her medical records for this purpose.

41.     On or about December 16, 2013, Phillips and Hendrix decided that Woods could start work, with one restriction – she could climb up one step on a ladder only. They also decided that she would be "reevaluated" in three months due to her epilepsy.

42.     This "conditional" clearance was unprecedented in Hendrix's experience.

43.     The Lab failed to communicate with Woods and keep her apprised of the status of her employment in a timely manner.

44.     On December 30 and 31, 2013, Woods reported to work at the Lab for her Animal Care Program orientation. She performed all tasks as required.

45.     On the morning of January 2, 2014, Woods was engaged in reviewing standard operating procedures as instructed by her trainer. During this time, she noticed an aura and realized that she was going to have a seizure.

46.     Woods told her trainer that she was going to have a seizure. She placed a jacket on the floor for under her head. She placed herself on the floor before the seizure began. She had a seizure. The seizure lasted about three minutes. Neither Woods nor any one was injured or harmed due to the seizure.

47.      Although unnecessary and unrequested, the Lab contacted an ambulance which took Woods to the Mount Desert Island Hospital Emergency Room. Woods returned to the Lab the same day after being seen at the emergency room.

48.     At the Lab, Woods was required to see the onsite provider, Nesbit. Nesbit told Woods that she was not cleared for duty due to her seizure, and she would have to see her specialist. Phillips informed Woods that she was being placed on unpaid leave until she saw her specialist. Woods agreed to see her specialist, neurologist Dr. Mirna Hajjar.

49.     On or about January 7, 2014, Dr. Hajjar, examined Woods and cleared her to return to work at the Lab. Woods informed the Lab that she was cleared to work.

50.     Although Dr. Hajjar medically cleared Woods, the Lab did not permit Woods to return to work.

51.     Unbeknownst to Woods, Nesbit contacted Dr. Hajjar to further discuss Woods' return to work.

52.     On or about January 17, 2014, Woods went to the worksite for the purpose of meeting with Nesbit. Woods expected to meet with Nesbit and then return work because Dr. Hajjar had cleared her and she had not heard otherwise from anyone at the Lab. When Woods arrived to meet with Nesbit, Nesbit asked her how she was feeling. Woods said she was feeling great. Nesbit informed Woods that for her safety and the safety of others, she is not cleared for the position she was hired for. Nesbit told Woods that they were afraid that she would fall and hit her head.

53.     Nesbit told Woods that she had spoken with Woods' neurologist, Dr. Hajjar. Nesbit stated that Woods has "restrictions" including not working alone, not climbing ladders and avoiding using computer screens and therefore cannot return to work. Woods had worked for years and had never been told she cannot work alone or had these other restrictions. The Lab was aware that in her previous job, Woods had climbed ladders and driven a forklift. She had also successfully used a handheld computer screen. Woods told Nesbit that she did not agree with the restrictions that Nesbit described. Woods said she can do the job of Animal Care Trainee and she wanted to go to work.

54.     Nesbit did not engage in any further discussion with Woods about the restrictions or about reasonable accommodations that. Nesbit told Woods to contact Phillips for further questions.

55.     Woods contacted Phillips to find out if she still had a job. On or about Tuesday, January 21, 2014, Phillips told Woods that the Lab could not accommodate Woods' needs and that she was unable to do the Animal Care Trainee job with her restrictions. Phillips also said

that there were no other jobs available that would fit her needs and restrictions. Woods said she could do the job. She had been willing to work with the restriction of standing on one step on the ladder and was willing to discuss any accommodations. Woods asked to return to work. Phillips did not engage in any discussion with Woods regarding reasonable accommodations.

56.     Woods told Phillips she did not understand why the Lab was doing this. She said felt she was being discriminated against. Phillips did not engage in an interactive dialogue with Woods. Phillips just repeated that there are no other jobs available for Woods and she could not return to work.

## COUNT I –MHRA
## TERMINATION

57.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

58.     Woods was able to safely perform the duties of Animal Care Trainee I with or without reasonable accommodation.

59.     The Lab terminated Woods because of her disability, record of disability, and regarded as disability, and need for accommodation.

60.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the MHRA.

## COUNT II – THE ADA
## TERMINATION

61.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

62.     Woods was able to safely perform the duties of Animal Care Trainee I with or without reasonable accommodation.

63.     The Lab terminated Woods because of her disability, record of disability, and regarded as disability and need for accommodation.

64.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the ADA.

## COUNT III – THE MHRA
## FAILURE TO ACCOMMODATE

65.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

66.     It is unlawful discrimination under the MHRA for an employer to not make reasonable accommodation to the known mental or physical limitations of an otherwise qualified employee.

67.     The Lab violated the MHRA by failing to engage in any interactive dialogue regarding reasonable accommodation and failing to provide Woods with reasonable accommodation.

68.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the MHRA.

## COUNT IV – THE ADA
## FAILURE TO ACCOMMODATE

69.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

70.     It is unlawful discrimination under the ADA for an employer not to make reasonable accommodation to the known physical limitations of an otherwise qualified employee.

71.     The Lab violated the ADA by failing to engage in any interactive dialogue regarding reasonable accommodation and failed to provide Woods with reasonable accommodation.

72.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the ADA.

## COUNT V – THE MHRA
## DISCRIMINATION IN TERMS AND CONDITIONS
## OF EMPLOYMENT

73.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

74.     The Lab violated the MHRA by discriminating against Woods based on her disability with respect to terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

75.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the ADA.

## COUNT VI – THE ADA
## DISCRIMINATION IN TERMS AND CONDITIONS
## OF EMPLOYMENT

76.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

77.     The Lab violated the ADA by discriminating against Woods based on her

disability with respect to terms, conditions and privileges of employment and any other matter directly or indirectly related to employment.

78.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the ADA.

## COUNT VII – THE MHRA
## ILLEGAL INQUIRY AND MEDICAL EXAMINATION

79.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

80.     The Lab violated the MHRA when it conditioned her hire on a requirement to undergo a medical examination in three months.

81.     The Lab violated the MHRA when it violated Woods' confidentiality, failed to maintain and collect information obtained on her medical condition on separate forms and in separate medical files; failed to treat her information as a confidential medical record; and contacted, disclosed and obtained medical information without her knowledge and consent.

82.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the MHRA.

## COUNT VIII – THE ADA
## ILLEGAL INQUIRY AND MEDICAL EXAMINATION

83.     Plaintiff Allison Woods realleges and hereby incorporates by reference all of the foregoing paragraphs as if set forth in their entirety herein.

84.     The Lab violated the ADA when it conditioned her hire on a requirement to undergo a medical examination in three months.

11

85.     The Lab violated the ADA when it violated Woods' confidentiality, failed to maintain and collect information obtained on her medical condition on separate forms and in separate medical files; failed to treat her information as a confidential medical record; and contacted, disclosed and obtained medical information without her knowledge and consent.

86.     The Lab acted intentionally, with malice, and with reckless indifference for Woods' rights under the ADA.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Allison Woods respectfully prays that this Court

a.      Grant a permanent injunction enjoining The Jackson Laboratory, its owners, officers, management personnel, employees, agents, successors, and assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates on the basis of disability;

b.      Order The Jackson Laboratory to institute and carry out policies, practices, trainings and programs that provide equal employment opportunities to qualified individuals with disabilities, and that eradicate the effects of past and present unlawful employment practices;

c.      Order The Jackson Laboratory to make whole Woods by providing her with appropriate lost earnings and benefits, with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and reasonable accommodations.

   d.  Order The Jackson Laboratory to make whole Woods by providing compensation for pecuniary losses, including but not limited to costs to be incurred for health and life insurance premiums and costs of seeking new employment, in amounts to be determined at trial;

   e.  Order The Jackson Laboratory to make whole Woods by providing compensation for nonpecuniary losses, including emotional pain, suffering, inconvenience, physical medical problems and mental anguish in amounts to be proved at trial;

   f.  Order The Jackson Laboratory to pay nominal damages.

   g.  Order The Jackson Laboratory to pay Woods punitive damages in an amount to be determined at trial.

   i.  Order The Jackson Laboratory to pay attorneys fees, litigation expenses, and costs of this action

   j.  Grant such further relief as the Court deems necessary and proper.

**JURY TRIAL REQUESTED**

  Allison Woods requests a jury trial.

Dated: 12.9.16           */s/ Kristin L. Aiello*
                 Kristin L. Aiello, Maine Bar No. 8071
                 Attorney for Allison Woods
                 Disability Rights Maine
                 24 Stone Street, Suite 204
                 Augusta, Maine  04330
                 (207) 626 2774 ext. 223
                 kaiello@drme.org

Dated: 12.9.16           */s/ Peter M. Rice*
                 Peter M. Rice, Maine Bar No. 7277
                 Attorney for Allison Woods
                 Disability Rights Maine
                 24 Stone Street, Suite 204
                 Augusta, Maine  04330

13

(207) 626 2774 ext. 223
pmrice@drme.org